UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT WOODELL,<br><br>Plaintiff,<br><br>v.<br><br>THOR MOTOR COACH, *et al.*,<br><br>Defendants. | Civil Action No. 2:22-cv-02222-KM-CLW<br><br>**OPINION AND ORDER** |

**CATHY L. WALDOR, U.S.M.J.**

**I.   Introduction**

This matter is before the Court on the motion of defendant General RV Center ("General") seeking to transfer this case to the United States District Court for the Eastern District of Michigan (ECF No. 5). The motion is fully briefed and has been referred to the undersigned by the Honorable Kevin McNulty. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, General's motion is **GRANTED.**

**II.   Background**

In March 2022, plaintiff Scott Woodell ("Woodell") filed this action in New Jersey Superior Court against defendants Thor Motor Coach ("Thor"), Ford Motor Company, and General (collectively, "Defendants"). *See* ECF No. 1-3 (the "Complaint"). Thor and General timely removed the case to this Court. *See* ECF No. 1. Woodell's claims arise from his purchase of a motor vehicle manufactured, sold, and/or repaired by Defendants. He alleges that the vehicle has been "rendered substantially impaired, unable to be utilized for its intended purposes and . . . worthless to Plaintiff." *See generally* Complaint; *id.* at ¶ 11. Woodell brings claims sounding in the New Jersey Motor Vehicle Warranty Act, the Magnuson-Moss (FTC) Warranty

Improvement Act, the Uniform Commercial Code, and the New Jersey Consumer Fraud Act. *See generally* Complaint.

The instant motion arises from a forum selection clause (the "FSC") contained in the purchase agreement between Woodell and General. The FSC states that "Purchaser agrees that the exclusive jurisdiction for deciding any dispute shall be in Oakland County, Michigan, and Purchaser will file any claim in Oakland County, Michigan". Complaint, Ex. A at ¶ 2. On the strength of the FSC, General now seeks to transfer the case to the United States District Court for the Eastern District of Michigan.[1]

### III.     Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As is the case here, "a forum-selection clause may be enforced by a motion to transfer under §1404(a)". *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 52 (2013).

The *Atl. Marine* Court further explained:

> In the typical case not involving a forum-selection clause, a district court considering a §1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations. Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice[" under] §1404(a).
>
> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice

---

[1] The Eastern District of Michigan encompasses Oakland County.

system. For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases. The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways.

First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . [T]he plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. . . . As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. . . .

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*Id.* at 62-64 (citations and quotation marks omitted).

### IV.   Analysis

#### a.   Whether there is a Valid Forum Selection Clause

In view of the above, the jumping off point for assessing General's motion is the existence *vel non* of a valid forum selection clause. In the Third Circuit, "in accord with the dictates of the Supreme Court, forum selection clauses are presumptively valid." *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000) (quoting *Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd.*, 938 F. Supp. 256, 263 (D.N.J. 1996; citing *Union Steel America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 686 (D.N.J. 1998)). "Accordingly,

courts will respect such clauses unless the resisting party makes a 'strong showing' that the clause is 'unreasonable.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); citing *Reynolds*, 938 F. Supp. at 263). Such clauses are deemed unreasonable "only if 'the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* at 565 (quoting *Coastal Steel Corp. V. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other ground*, *Lauro Lines v. Chasser*, 490 U.S. 495, 104 (1989); citing *Union Steel*, 14 F. Supp. 2d at 686). Woodell's arguments on this point implicate the second and third enumerated factors; *i.e.*, that an order forcing him to litigate this case in Michigan (i) "would be in violation of public policy in the state as it is promoting fraudulent acts and breaches of warranty by allowing a large manufacturer [to] apply undue prejudice and inconvenience onto Plaintiff"; and (ii) "would seriously inconvenience trial", as all relevant witnesses are located in New Jersey. *See* ECF No. 6 at 4.

    These arguments fail. As to the purported public policy violations, the prevention of warranty breaches, fraud, inconvenience, and prejudice, are broad-brush (albeit laudable) considerations, not strong state policies. *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) ("[C]ourts may refuse to enforce contracts that are unconscionable or violate public policy. . . . A simple breach of warranty or breach of contract is not per se unfair or unconscionable.") (cleaned up; citations omitted); *cf. McNeill v. Zoref*, 297 N.J. Super. 213, 222-24 (App. Div. 1997) (declining to enforce forum selection clause where enforcement would be contrary to "the strong public policy . . . found in the entire controversy doctrine which is firmly

entrenched in this State"), *superseded by statute on other grounds as stated in Estate of Adier v. Wells Fargo Home Mortg.*, 2017 N.J. Super. Unpub. LEXIS 3079, at *6 (Super. Ct. App. Div. Dec. 13, 2017). Moreover, "New Jersey public policy is seemingly not violated where the forum selection clause is the result of an arms length negotiation, at least absent legislative intent to the contrary." *Lester v. Gene Express, Inc.*, 2009 U.S. Dist. LEXIS 105029, at *10 (D.N.J. Nov. 10, 2009) (citing *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 192 (N.J. 1996)); *see also Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, 2007 U.S. Dist. LEXIS 90857, at *19 (D.N.J. Dec. 11, 2007) ("As a matter of public policy, this Court refrains from interfering with reasonable business agreements. Forum selection clauses are 'bargained for by the parties[, and enforcement] protects their legitimate expectations and furthers vital interests of the justice system.'") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring); other citations omitted). And for a forum selection clause to be deemed invalid on inconvenience grounds, the agreement must render litigation in the selected forum "so inconvenient as to deprive the party of his day in court." *Heartland Payment Sys. v. Commer*, 2007 U.S. Dist. LEXIS 81762, at *4 (D.N.J. Nov. 5, 2007) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995)). Woodell falls far short of demonstrating this is the case here.

As Woodell has failed to make a "strong showing" that the FSC is unreasonable, the Court concludes this matter is governed by a valid forum selection clause.

b. **Whether the Public Interest Factors Weigh in Favor of Transfer**

As noted above, the Court's determination that the FSC governs the instant dispute means that (i) Woodell "must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed"; and (ii) the Court will weigh only public interest factors.

*See Atl. Marine*, *supra*. Woodell fails to sustain his burden of showing that the public interest factors weigh against transfer.

The relevant public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulty resulting from court congestion; (4) local interest in deciding the controversy; (5) public policies of the fora; and (6) the court's familiarity with applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80 (citing authorities). General's motion presents cogent arguments as to why these factors either weigh in its favor or are neutral. *See* ECF No. 5 at 5-6. As Woodell does not address these arguments in his opposition brief, any arguments in opposition are deemed waived. *See, e.g.*, *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 U.S. Dist. LEXIS 120593, at *11 (D.N.J. Aug. 26, 2013) ("Plaintiff has waived its opposition to this argument by failing to respond to it.") (citing cases). Therefore — and particularly because Woodell bears the burden of demonstrating transfer is unwarranted — the Court accepts General's arguments that the relevant factors militate in favor of transfer.

   c.  **How Transfer Affects Non-Contracting Parties**

The Court must address one additional wrinkle. While, as noted, there are three defendants in this case, the FSC was executed only by Woodell and General. General represents that defendants Thor and Ford have consented to the requested transfer.[2]

The Third Circuit has grappled with the question of "how district courts should apply *Atlantic Marine* when all defendants seek a transfer to one district under § 1404(a), but only some of those defendants agreed to forum-selection clauses that designate a different district." *In*

---

[2] General presents written documentation of Ford's consent, but not of Thor's. *See* ECF No. 5-1, Ex. C. Given General's repeated representations and the lack of evidence or argument to the contrary, the Court will assume both Ford and Thor have consented to the requested relief.

6

*re Howmedica Osteonics Corp.*, 867 F.3d 390, 399 (3d Cir. 2017). Importantly — and notwithstanding that General relies on *Howmedica* in the portion of its moving brief addressing this issue — this is not the situation here. Instead, while this is a case where some, but not all, defendants have signed a forum selection clause, it is not one where those defendants seek (or at least consent) to transfer a case to a *different* forum than the one designated in that clause. Instead, the target of the motion is the same forum as that specified in the FSC.

*Howmedica* therefore does not control here. Indeed, the Third Circuit explained there that "where the *Atlantic Marine* framework would wholly deprive non-contracting parties of their right to seek transfer on the basis of their private interests, the customary § 1404(a) analysis guarantees them that right." *Id.* at 403 (citing *Jumara*, 55 F.3d at 879-80). It accordingly crafted "a separate framework to determine how forum-selection clauses affect the § 1404(a) transfer analysis where both contracting and non-contracting parties are found in the same case and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*". *See id.*

The framework set forth in *Howmedica* thus seeks to protect the interests of non-contracting parties: interests guaranteed by § 1404(a) that are jettisoned by *Atl. Marine* when parties enter into a forum selection clause.[3] Here, though, Thor and Ford's interests may be deemed sufficiently protected by dint of their consent to transfer. To borrow from the Third Circuit, there is no concern that the "*Atlantic Marine* framework would wholly deprive [Thor and Ford] of their right to seek transfer on the basis of their private interests" as ensured by § 1404(a). *See Howmedica*, *supra*. The Court therefore declines to analyze this matter under the

---

[3] Indeed, two of the four *Howmedica* steps expressly contemplate as much. *See Howmedica*, 867 F.3d at 404 (considering, *inter alia*, "the private and public interests relevant to non-contracting parties" and "which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests").

*Howmedica* framework and instead honors Thor and Ford's consent to transfer the case as requested in General's motion.

## V.     Conclusion

For the reasons stated, defendant General RV Center's motion to transfer (ECF No. 5) is **GRANTED**. The Clerk of the Court is directed to transfer this matter to the United States District Court for the Eastern District of Michigan.

Dated: December 7, 2022

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.
